## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| **SIXTA GLADYS PEÑA MARTINEZ** *et al.,* | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | **Case No. 3:18-cv-01206-WGY** |
| | ) | |
| **ALEX M. AZAR II, Secretary, United States** | ) | |
| **Department of Health and Human Services,** | ) | |
| **in his official capacity** *et al.,* | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

## DEFENDANTS' MOTION TO DISMISS

# TABLE OF CONTENTS

INTRODUCTION ....................................................................................................1

STATUTORY BACKGROUND ...............................................................................2

    I.       Supplemental Security Income ...............................................................2

    II.     Supplemental Nutrition Assistance Program and Nutrition Assistance Program.......3

    III.   Medicare .................................................................................................5

FACTUAL AND PROCEDURAL BACKGROUND................................................6

STANDARD OF REVIEW ......................................................................................7

ARGUMENT ...........................................................................................................8

    I.       The Court Should Dismiss Counts I and III for Lack of Subject Matter
          Jurisdiction..............................................................................................8

          A.     The Social Security Act and Medicare Act Preclude Judicial Review of
                Counts I and III Because Plaintiffs Fail to Allege That They Have
                Channeled Their Claims Through the Agency Administrative Appeals
                Process Established by Congress ...........................................................8

                1.    The Social Security Act Precludes Judicial Review of Count I..............8

                2.    The Medicare Act Precludes Judicial Review of Count III ...................11

          B.     The Court Should Dismiss Most of the Plaintiffs Alleging Claims
                Under Count I, and All Plaintiffs Asserting Claims Under Count II,
                Because These Plaintiffs Lack Standing to Sue...........................................13

                1.    Most of the Plaintiffs Alleging Claims Under Count I Lack
                     Standing to Sue Because They Fail to Adequately Plead That
                     They Have Suffered an Injury in Fact.....................................................14

                2.    None of the Plaintiffs Asserting Claims Under Count II Possess
                     Article III Standing Because They Have Failed to Plead Facts
                     Sufficient to Show That They Have Suffered an Injury in Fact .............15

    II.      The Complaint Fails to State a Claim on Which Relief Can Be Granted
          Because Congress May Rationally Limit Eligibility for the Benefits
          Programs at Issue to Residents of the Fifty States in Pursuit of a Legitimate
          Government Purpose.................................................................................17

          A.     Rational Basis Review Applies to Plaintiffs' Claims Because Puerto
                Rico Is a Territory Subject to the Territory Clause.......................................17

i

B.      The Challenged Provisions Withstand Constitutional Scrutiny as
        Applied to Plaintiffs Because They Rationally Relate to Legitimate
        Governmental Ends........................................................................................19

CONCLUSION...........................................................................................................................25

## INTRODUCTION

When Congress exercises its discretion to establish eligibility requirements for receipt of government benefits, courts afford that decision a strong presumption of constitutionality. In accordance with this principle, the Supreme Court has held that Congress may place restrictions on the eligibility of persons residing in U.S. territories to receive federal benefits payments, and that such restrictions are consistent with equal protection principles. Plaintiffs' complaint asks this Court to ignore that binding precedent and to do so even though the subject matter of their claims falls outside of this Court's jurisdiction.

At the outset, Plaintiffs cannot pursue two of their three claims because they arise under the Social Security Act and Medicare Act, respectively, and Plaintiffs have failed to bring this action under 42 U.S.C. § 405(g), which is the only means established by Congress to assert such claims. Additionally, most of the plaintiffs asserting claims under the Social Security Act, and all of the plaintiffs challenging the Supplemental Nutrition Assistance Program, lack standing to sue. Consequently, the Court lacks jurisdiction over Plaintiffs' claims, and they should be dismissed for lack of subject matter jurisdiction.

In any event, in light of the binding precedent on the merits of the claims in the complaint, Plaintiffs have failed to state a claim on which relief may be granted. Puerto Rico is a United States territory subject to the plenary authority of Congress under the Territory Clause. Binding Supreme Court precedent makes clear that Congress can pass economic legislation over the territories so long as it has a rational basis for its actions. *See Harris v. Rosario*, 446 U.S. 651 (1980) (per curiam); *Califano v. Torres*, 435 U.S. 1 (1978) (per curiam). Here, not only are the challenged provisions rational given the unique circumstances surrounding Puerto Rico (*i.e.*, its unique tax status, the lower operating costs for health care providers, and the cost to the federal

1

treasury of extending benefits), but Plaintiffs have also failed to negate every reasonably conceivable set of facts that could provide for the different treatment accorded Puerto Rico. The Equal Protection Clause does not obligate Congress to treat Puerto Rico as if it were a State. The challenged statutes thus withstand constitutional scrutiny, and the complaint must be dismissed.

## STATUTORY BACKGROUND

Plaintiffs' complaint alleges claims arising under three separate statutory schemes for benefits: (1) the Supplemental Security Income program administered by the Social Security Administration, (2) the Supplemental Nutrition Assistance Program administered by the U.S. Department of Agriculture, and (3) the Medicare program administered by the U.S. Department of Health and Human Services. The relevant provisions of each is set forth in more detail below.

### I.      Supplemental Security Income

The Social Security Administration ("SSA") provides benefits to aged persons and persons with disabilities primarily under two programs. Under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq*., SSA pays benefits to insured workers and their families at retirement or death, or in the event of disability. Under the Supplemental Security Income ("SSI") program, established by Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq*., SSA provides benefits to aged and blind persons, and persons with disabilities, who meet certain income and resource requirements. For purposes of determining eligibility for benefits, "aged" refers to an individual who is 65 years of age or older. *Id*. § 1382c(a)(1)(A). "Blind" refers to an individual who "has central visual acuity of 20/200 or less in the better eye with the use of a correcting lens," or who is considered to be blind under certain State-approved plans. *Id*. § 1382c(a)(1)(A). An adult "disabled individual" refers to a person who is "is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or

which has lasted or can be expected to last for a continuous period of not less than twelve months."

*Id*. § 1382c(a)(3)(A).  Even if a person is "aged," "blind," or "disabled," he or she must satisfy

income and resource requirements to be eligibility to receive SSI benefits.  *Id*. §§ 1382(a)(1),

(a)(2)..  No individual is eligible for SSI benefits during any month in which he or she "is outside

the United States."  *Id*. § 1382(f)(1).  For purposes of the SSI program, "the term 'United States,'

when used in a geographical sense," is defined as "the 50 States and the District of Columbia."  *Id*.

§ 1382c(e).[1]

## II.    Supplemental Nutrition Assistance Program and Nutrition Assistance Program

Congress originally enacted the Supplemental Nutrition Assistance Program ("SNAP") in

1964 in an effort to combat hunger and malnutrition by providing assistance to low-income

households for purchasing food.  *See* Food Stamp Act of 1964, Pub. L. No. 88-525, 78 Stat. 703

(codified at 7 U.S.C. §§ 2011 *et seq*.).[2]  "State[s]" can elect to participate in SNAP and, if they do,

are responsible for certifying household eligibility for benefits, issuing benefits, and otherwise

administering the program on the state level.  7 U.S.C. §§ 2013(a), 2020(a)(1); 7 C.F.R. § 271.4.

The federal government, in turn, provides the funding for benefits and covers 50 percent of the

administrative costs borne by the States.  7 U.S.C. §§ 2013(a), 2025.  Within the federal

government, the Secretary of Agriculture has delegated most of the administration of SNAP to the

Food and Nutrition Service, a component agency of the U.S. Department of Agriculture.  7 C.F.R.

---

[1] Additionally, by passing a Joint Resolution in 1976, the U.S. Congress made SSI program benefits available to residents of the Northern Mariana Islands.  *See* Pub. L. No. 94-241, § 502(a)(1), 90 Stat. 263, 268 (1976) (codified at 48 U.S.C. § 1801 note, and implemented by 20 C.F.R. § 416.120(c)(10)).

[2] The program's name was changed from its original name, the "Food Stamp Program," to SNAP in 2008.  *See* Food, Conservation, and Energy Act of 2008, Pub. L. No. 110-234, § 4001, 122 Stat. 923, 1092.

§ 271.3.  If a State elects to participate in the program, it must administer its SNAP program in accordance with the Food and Nutrition Act of 2008, as amended, and applicable regulations.  *See* 7 U.S.C. § 2020(e); 7 C.F.R. § 273.2.  Eligibility of entities to participate in SNAP is limited to "the fifty States, the District of Columbia, Guam, the Virgin Islands of the United States, and the reservations of an Indian tribe whose tribal organization meets the requirements of this chapter for participation as a State agency."  7 U.S.C. § 2012(r).

To receive benefits under SNAP, a non-elderly, non-disabled household must have a gross income below 130% of the poverty line and countable resources below $2,250 (or $3,250 for elderly or disabled households).  *See id.* §§ 2014(c)(2) (gross income test), (g)(1) (resource test). The household will receive SNAP benefits if the deductions permitted by statute reduce the household's income below 100% of the poverty line for the household's size (currently, $1,005 per month for a household of one).  *See id.* §§ 2014(c)(1) (net income limit), (e) (income deductions); *see also* 7 C.F.R. § 273.9 (calculating income and deductions).  The maximum monthly SNAP benefit for a household of one is $192 per month, and the minimum is $15 per month.  *See* 7 U.S.C. §§ 2017(a) (allotment set based on cost of thrifty food plan); 2012(u) (definition of thrifty food plan); 7 C.F.R. § 273.10(e)(2)(ii)(C) (minimum benefit).  The amount of eligible SNAP benefits is determined by deducting 30% of the household's net income, after all applicable deductions, from the maximum allotment for that household size.  *See* 7 U.S.C. § 2017(a) (allotment value); *see also* 7 C.F.R. § 273.10(c) (calculating benefit levels).

The Food and Nutrition Service also oversees a block grant to Puerto Rico to fund the Nutrition Assistance Program ("NAP").  NAP is a food assistance program implemented in 1982 in lieu of SNAP.  *See* 7 U.S.C. § 2028.  There is no gross income test to qualify for NAP benefits. *See generally id.* § 2028(b)(1)(A) (Secretary approves plan for Puerto Rico that sets eligibility

4

criteria); Government of Puerto Rico, Department of the Family, Administration for Socioeconomic Development of the Family, State Plan of Operation, Nutrition Assistance Program, Fiscal Year 2018 (Feb. 1, 2018) (attached as Ex. 1). However, after allowable deductions, a household of one must have a net income below $233 per month and countable resources below $3,000 in order to qualify for benefits (or below $5,000 if the household has a member age 60 or older. Ex. 1 at 21, 27. The maximum benefit under SNAP is $112 for a household of one. *Id.* at 27. Similar to SNAP, the amount of eligible NAP benefits is determined by deducting 30% of the household's net income, after all applicable deductions, from the maximum allotment for that household size. *Id.* at 24. Following Hurricane Maria, Congress provided an additional $1.27 billion in disaster nutrition assistance funding for NAP. *See* Pub. L. No. 115-72 (Oct. 26, 2017).

## III.   Medicare

Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395-1395lll, commonly known as the Medicare Act, establishes a health insurance program for elderly persons and persons with disabilities. The Secretary of Health and Human Services, acting through the Centers for Medicare & Medicaid Services, administers the Medicare program. *See generally id.* In general, Medicare Part A covers inpatient hospital services, *id.* § 1395d; Part B covers physician and other outpatient medical services, *id.* § 1395k; Part C (also known as Medicare Advantage) enables Medicare recipients to get the benefits covered by Parts A and B through privately-run healthcare plans, *id.* § 1395w-22; and Part D authorizes private insurers to offer federally-subsidized insurance plans for prescription drugs. *Id.* § 1395w-102.

With respect to prescription drug coverage, Congress created a "subsidy program through which Medicare provides funds directly to indigent Part D beneficiaries to help them pay their

share of drug costs." *First Med. Health Plan, Inc. v. Vega-Ramos*, 479 F.3d 46, 49 (1st Cir. 2007) (citing 42 U.S.C. § 1395w-114). Congress created these Medicare subsidies after prohibiting "state Medicaid programs – but not territory Medicaid programs – from paying for any portion of prescription drug costs." *Id*. (citing 42 U.S.C. §§ 1395w–114, 1396u–5(e)). However, because a territory's Medicaid program can still pay for prescription drug coverage, the residents of a territory are excluded from receiving the Medicare subsidies. *See id*. (citing 42 U.S.C. § 1395w-114(a)(3)(F)). Instead, Congress "authorizes each territory to seek approval from the Secretary to implement a plan to provide full prescription drug coverage," *id*. (citing 42 U.S.C. § 1396u-5(e)), and if the territory's plan is approved, "the federal government increases the territory's Medicaid allotment to help pay for this assistance," *id*. (citing 42 U.S.C. § 1396u-5(e)(3) (emphasis omitted).

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs allege the following facts, which are taken as true solely for purposes of this motion. The ten plaintiffs in this action are residents of Puerto Rico. Compl. ¶¶ 14-23. Plaintiff Sixta Gladys Peña Martinez alleges that she received SSI benefits until she moved to Puerto Rico, and that if she resided in one of the fifty States, the District of Columbia, or the Northern Mariana Islands, she would be eligible to receive SSI benefits. *Id*. ¶¶ 14, 47. Plaintiffs Nélida Santiago Álvarez, Juan Ramón Vélez Marrero, Victor Ramón Ilarraza Acevedo, Rosa María Ilarraza Rosado, Ramón Luis Rivera Rivera, and Yomara Valderrama Santiago allege that if they resided in one of the fifty States, the District of Columbia, or the Northern Mariana Islands, they believe they might be eligible to receive SSI benefits. *Id*. ¶¶ 15-16, 19, 21-23, 47. Plaintiffs Peña Martinez, Santiago Álvarez, Vélez Marrero, Gamaly Vélez Santiago, Ilarraza Acevedo, Maritza Rosado Concepción, Ilarraza Rosado, Rivera, and Valderrama Santiago allege that they believe they would qualify for SNAP benefits if they resided in one of the fifty States, the District of

Columbia, Guam, or the U.S. Virgin Islands, and believe that they would receive more nutritional assistance benefits than they currently do through NAP. *Id.* ¶¶ 14-16, 18-23, 58. Plaintiff María Luísa Aguilar Galíndez alleges that she receives benefits under Medicare Parts A, B, and C, and that if she resided in one of the fifty States or the District of Columbia, she would be eligible for a low-income subsidy under Medicare Part D, and therefore would receive a greater total amount under Medicare than she currently does. *Id.* ¶¶ 17, 71.

Plaintiffs initiated this action on April 13, 2018 by filing a complaint alleging three causes of action. Plaintiffs seek a declaratory judgment that the relevant provisions of the SSI statute (Count I), SNAP statute (Count II), and Medicare statute (Count III) that limit benefits eligibility for Puerto Rico residents violate the equal protection component of the Fifth Amendment, and injunctive relief barring enforcement of these provisions. *Id.* ¶¶ 91-98 (Count I), 99-106 (Count II), 107-116 (Count III), 117 (Prayer for Relief).

## STANDARD OF REVIEW

Defendants have moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6). Federal Rule of Civil Procedure 12(b)(1) permits a defendant to move for dismissal when a court lacks subject matter jurisdiction to entertain a matter under consideration. Fed. R. Civ. P. 12(b)(1). The party invoking the jurisdiction of a federal court has the burden of proving jurisdiction exists. *Murphy v. United States*, 45 F.3d 520, 522 (1st Cir. 1995). Amorphous or conclusory allegations that federal jurisdiction exists are not sufficient to survive a motion to dismiss. *United States ex rel. Duxbury v. Ortho Biotech Prods., L.P.*, 579 F.3d 13, 28 (1st Cir. 2009). When, as here, a defendant "accepts the plaintiff's version of jurisdictionally-significant facts as true and addresses their sufficiency," the Court "must credit the plaintiff's well-pleaded factual allegations . . . [and] draw all reasonable inferences from them in her favor." *Valentin v. Hosp. Bella Vista*, 254 F.3d

7

358, 363 (1st Cir. 2001).  If, on these facts and inferences, the plaintiff has not adequately pled a

basis for the Court's subject matter jurisdiction, the Court should grant the defendant's motion and

dismiss the case.  *See id.*; *see also Kottori v. FBI*, 784 F. Supp. 2d 83, 84-85 (D. Mass. 2011).

In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must plead

"enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 570 (2007).  The Court must "accept as true all well-pleaded facts alleged in the

complaint and draw all reasonable inferences therefrom in the pleader's favor."  *Santiago v. Puerto*

*Rico*, 655 F.3d 61, 72 (1st Cir. 2011).  However, the Court is "not bound to accept as true a legal

conclusion couched as a factual allegation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

*Twombly*, 550 U.S. at 555).  The Court may take notice on a motion to dismiss of facts present in

publicly-available government documents.  *Kenney v. State St. Corp.*, 694 F. Supp. 2d 67, 70 (D.

Mass. 2010) (citing *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994)); *accord Lussier v.*

*Runyon*, 50 F.3d 1103, 1114 (1st Cir. 1995).

## ARGUMENT

**I.  The Court Should Dismiss for Lack of Subject Matter Jurisdiction.**

    **A.  The Social Security Act and Medicare Act Preclude Judicial Review of Counts I and III Because Plaintiffs Fail to Allege That They Have Channeled Their Claims Through the Agency Administrative Appeals Process Established by Congress.**

        **1.  The Social Security Act Precludes Judicial Review of Count I.**

In Count I, Plaintiffs Peña Martinez, Santiago Álvarez, Vélez Marrero, Ilarraza Acevedo,

Ilarraza Rosado, Rivera Rivera, and Valderrama Santiago allege that if they resided in one of the

fifty States, the District of Columbia, or the Northern Mariana Islands, they would (or might) be

eligible to receive SSI benefits.  Compl. ¶¶ 91-98; *see also id.* ¶¶ 14-16, 19, 21-23, 47.  This Court

lacks jurisdiction over Count I because these plaintiffs fail to allege that they have presented their

8

claims to the Commissioner of Social Security and received final administrative decisions on their claims before filing suit.

The Social Security Act expressly provides that 42 U.S.C. § 405(g) is the exclusive jurisdictional basis for a claimant seeking judicial review of claims for Social Security benefits. 42 U.S.C. §§ 405(g) & (h), 1383(c)(3).  A claim arises under the Social Security Act when that statute provides "both the standing and the substantive basis for" the claim, regardless of whether the claims for benefits can also be characterized as arising under other statutes or Constitutional guarantees.  *Heckler v. Ringer*, 466 U.S. 602, 615, 620 (1984); *Weinberger v. Salfi*, 422 U.S. 749, 760-61 (1975).  In *Salfi*, the U.S. Supreme Court determined that the phrase "arising under" applied to claims challenging the constitutionality of a duration-of-relationship requirement under the Social Security Act.  422 U.S. at 757-63.  While recognizing that the plaintiffs' claims had arisen under the U.S. Constitution, the Court observed that they also "arose under" the Social Security Act because (1) the plaintiffs sought to recover Social Security benefits, and (2) the Social Security Act provided both the standing and the substantive basis for their constitutional contentions.  *See id.* at 760-61.  Thus, simply because Count I purports to assert SSI-related claims under the Constitution does not change the fact that those claims "also arise under the Social Security Act" because, ultimately, they are claims for additional Social Security benefits.  *See id.* at 760.  And as long as the claim arises under that Act, as the Supreme Court has explained, the nature of the claim has no bearing on whether it must be channeled through the exhaustion and exclusive judicial review provisions of Section 405(g):

> Those cases [*Weinberger v. Salfi*, 422 U.S. 749 (1975), and *Heckler v. Ringer*, 466 U.S. 602 (1984)] themselves foreclose distinctions based upon . . . the "collateral" versus "noncollateral" nature of the issues, or the "declaratory" versus "injunctive" nature of the relief sought.  Nor can we accept a distinction that limits the scope of § 405(h) to claims for monetary benefits.  Claims for money, claims for other benefits, *claims of program eligibility*, and claims that contest a sanction or remedy

9

may all similarly rest upon individual fact-related circumstances, may all similarly dispute agency policy determinations, or may all similarly involve the application, interpretation, or constitutionality of interrelated regulations or statutory provisions. There is no reason to distinguish among them in terms of the language or in terms of the purposes of § 405(h).

*Shalala v. Ill. Council on Long Term Care*, 529 U.S. 1, 13-14 (2000) (emphasis added).

In this case, the Social Security Act furnishes the "standing and substantive basis" (if any) for Count I, because these claims represent claims of program eligibility (namely, eligibility to receive SSI benefits). As such, Count I arises under the Social Security Act and must be brought under Section 405(g). *See* 42 U.S.C. § 1383(c)(3). "*Salfi* and *Illinois Council* make clear that the fact that the plaintiffs have a constitutional basis for their claims does not change the fact that those claims 'arise under' the [Social Security] Act." *Justiniano v. Soc. Sec. Admin.*, 876 F.3d 14, 22 (1st Cir. 2017) (citing *Ill. Council*, 529 U.S. at 11-14; *Salfi*, 422 U.S. at 760-61). "What matters is that those claims are predicated on – and thus 'arise under' – the plaintiffs' interest in obtaining the benefits to which they contend they are entitled under the Act." *Id.*

The Social Security Act expressly precludes bringing such claims under 28 U.S.C. § 1331. *See* 42 U.S.C. § 405(h) ("No action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter."). The Supreme Court has characterized Section 405(h)'s bar to other avenues of review as "sweeping and direct," *Salfi*, 422 U.S. at 757, and has explained that this bar applies to all "claim[s] arising under [ ] the [Social Security] Act." *Heckler*, 466 U.S. at 605. Consequently, "[b]ecause the plaintiffs' claims 'arise under' the Social Security Act, those claims may be heard in federal court only if the plaintiffs are in compliance with Section 405(g)." *Justiniano*, 876 F.3d at 22-23.

10

Judicial review under Section 405(g) requires presentation of a claim to the agency and the issuance of a "final decision of the Commissioner of Social Security."  42 U.S.C. § 405(g).  A court lacks jurisdiction to undertake any review of agency action until after a plaintiff has complied with the administrative review requirements established by the statute.  The Supreme Court has interpreted Section 405(g) as incorporating two distinct concepts: a non-waivable requirement of presentation of any claim to the Commissioner, and a requirement of exhaustion of all administrative remedies.  *Heckler*, 466 U.S. at 617; *see also Ill. Council*, 529 U.S. at 15 ("§ 405(g) contains the nonwaivable and nonexcusable requirement that an individual present a claim to the agency before raising it in court") (citations omitted).  Therefore, Count I, which pertains to eligibility for SSI benefits, must first be presented to the Commissioner, and can be brought in federal court only *after* the agency issues a final decision addressing the specific factual circumstances of each individual plaintiff.  Merely naming the Commissioner or SSA as defendants in this action does not constitute compliance with Section 405(g)'s presentation and exhaustion requirements.

Consequently, because Count I arises under the Social Security Act, and because Plaintiffs have failed to allege that they have both presented the claims asserted in this count to the Commissioner and exhausted all of their administrative remedies, the Court lacks subject matter jurisdiction over Count I.

## 2.    The Medicare Statute Precludes Judicial Review of Count III.

In Count III, Plaintiff Aguilar Galíndez asserts that she receives benefits under Medicare Parts A, B, and C, and that if she resided in one of the fifty States or the District of Columbia she would eligible for a low-income subsidy under Medicare Part D, and therefore would receive a greater amount of Medicare benefits than she currently does.  Compl. ¶¶ 107-116; *see also id.* ¶¶

11

17, 71.  The Court lacks jurisdiction over Count III because Plaintiff Aguilar Galíndez fails to allege that she has channeled this claim through the Social Security Administration, as mandated by the Medicare statute.

As part of the Social Security Act, the Medicare program incorporates by reference the exhaustion requirements that apply to beneficiaries of the Social Security program.  *See* 42 U.S.C. § 1395ii (incorporating by reference 42 U.S.C. §§ 405(g), (h)).  Thus, 42 U.S.C. § 1395ii establishes that 42 U.S.C. § 405(g) and (h) are the exclusive jurisdictional bases for a claimant seeking judicial review of claims arising under the Medicare Act.  *See Ill. Council*, 529 U.S. at 25 (concluding that § 405(g) of the Social Security statute was the exclusive basis to challenge Medicare-related regulations); *see also* § 42 U.S.C. 1395w-114(3)(B)(iv)(III) (establishing that judicial review of claims for Medicare Part D low-income subsidies is governed by § 405(g) and 405(h)).  And as with the Social Security statute, "neither federal question nor federal defendant jurisdiction is available for suits 'to recover on any claim arising under' the [Medicare] Act." *Puerto Rican Ass'n of Physical Med. & Rehab., Inc. v. United States*, 521 F.3d 46, 48 (1st Cir. 2008) (citing 42 U.S.C. § 405(h)) (explaining that § 405(h) relates by its own terms "to the Social Security program but is incorporated *mutatis mutandis* into the Medicare Act, § 1395ii").  Rather, Congress specified that judicial review is available *only* under specific circumstances "once a specified agency appeals process is completed."  *Id*. at 48; *see, e.g.*, 42 U.S.C. §§ 1395ff(b)(1)(A), 1395oo.  This statutory prerequisite to judicial review "reaches beyond ordinary administrative law principles of 'ripeness' and 'exhaustion of administrative remedies.'"  *Ill. Council*, 529 U.S. at 12.

As it did in *Salfi*, "the Supreme Court has interpreted broadly the section 405(h) bar, holding that a claim 'arises under' the . . . Medicare Act if 'the standing and the substantive basis'

for the claim derive from that statute." *Puerto Rican Ass'n of Physical Med.*, 521 F.3d at 48 (citations omitted). When a lawsuit "seeks at its heart the extension of Medicare benefits," that action is barred by the Medicare statute unless and until the claimant channels the legal attack through the agency. *Id.* This jurisdictional requirement holds true irrespective of whether the claim is one for money, benefits, or program eligibility, and irrespective of whether the challenge is premised on evidentiary, rule-related, statutory, or constitutional grounds. *See Justiniano*, 876 F.3d at 21-22 (citing *Ill. Council*, 529 U.S. at 10).

Count III "arises under" the Medicare Act because it is "predicated on . . . the plaintiff['s] interest in obtaining the benefits to which [she] contend[s she is] entitled under the Act," namely, the extension of Medicare Part D low income subsidies to Puerto Rico. *See id.* at 22 (explaining "that the fact that the plaintiffs have a constitutional basis for their claims does not change the fact that those claims 'arise under' the Act") (citations omitted). Because Count III "'arise[s] under' the [Medicare] Act, [it] may be heard in federal court only if the plaintiff[ is] in compliance with" the judicial review provisions of the Medicare Act. *Id.* at 22-23. Plaintiff Aguilar Galíndez does not allege that she has channeled her claims through the administrative process of the Social Security Administration, or that she has obtained a waiver from the agency. Accordingly, the Court lacks subject matter jurisdiction over Count III.

**B.      The Court Should Dismiss Most of the Plaintiffs Alleging Claims Under Count I, and All Plaintiffs Asserting Claims Under Count II, Because These Plaintiffs Lack Standing to Sue.**

A court's inquiry into Article III standing contains the three following elements: a plaintiff must allege "[1] personal injury [2] fairly traceable to the defendant's allegedly unlawful conduct and [3] likely to be redressed by the requested relief." *Allen v. Wright*, 468 U.S. 737, 751 (1984); *accord Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). The plaintiff bears the burden

of showing that these requirements are satisfied.  *Lujan*, 504 U.S. at 561.

A facial challenge to standing "accepts the plaintiff's version of jurisdictionally-significant facts as true and addresses their sufficiency, thus requiring the court to assess whether the plaintiff has propounded an adequate basis for subject-matter jurisdiction."  *Valentin v. Hosp. Bella Vista*, 254 F.3d 358, 363 (1st Cir. 2001) (citation omitted).  With the exception of Plaintiff Peña Martinez, none of the plaintiffs who allege claims under Count I have sufficiently pleaded that they have suffered the injury-in-fact requirement of Article III standing.  Additionally, none of the plaintiffs who assert claims under Count II have pleaded facts sufficient to show that they have suffered an injury in fact.  The Court should thus dismiss Count I in large part, and all of Count II, for lack of subject-matter jurisdiction.

>    1.    **Most of the Plaintiffs Alleging Claims Under Count I Lack Standing to Sue Because They Fail to Adequately Plead That They Have Suffered an Injury in Fact.**

The injury in fact alleged by the plaintiffs asserting claims under Count I is that if those plaintiffs resided in one of the fifty States, the District of Columbia, or the Northern Mariana Islands, they would be eligible to receive SSI benefits.  Compl. ¶¶ 91-98; *see also id.* ¶¶ 14-16, 19, 21-23, 47.  Plaintiff Peña Martinez contends that she received SSI benefits when she resided in New York, and that she was no longer eligible for such benefits when she moved to Puerto Rico.  *Id.* ¶ 14.  By contrast, the remaining plaintiffs alleging claims under Count I (Santiago Álvarez, Vélez Marrero, Ilarraza Acevedo, Ilarraza Rosado, Rivera Rivera, and Valderrama Santiago) fail to plead facts sufficient to allege their eligibility for SSI benefits if they resided in one of the fifty States, the District of Columbia, or the Northern Mariana Islands.  Rather, these plaintiffs allege that they are subject to varying specific health conditions.  *See id.* ¶¶ 15-16, 19, 21-23, 47.  However, these allegations, standing alone, are not sufficient to show that these plaintiffs would

14

be eligible to receive SSI benefits if they resided in one of the fifty States, the District of Columbia, or the Northern Mariana Islands.  Specifically, these plaintiffs have failed to plead facts sufficient to establish that they are a "disabled individual" for SSI purposes.  *See* 42 U.S.C. § 1382c(a)(3)(A) (definition of "disabled individual").  Additionally, though Plaintiff Vélez Marrero alleges that he is over 65 years of age, Compl. ¶ 16, he does not plead facts sufficient to show that he qualifies for SSI benefits as an "aged" person because he fails to plead facts demonstrating that he satisfies SSI's income and resource requirements.  *See* 42 U.S.C. §§ 1382(a)(1), (a)(2) (SSI income and resource eligibility requirements).

Furthermore, for purposes of a Rule 12(b)(1) motion to dismiss, the Court is not required to accept as true the legal conclusion that these plaintiffs "would be eligible for SSI benefits."  *See Clean Water Action v. Searles Auto Recycling Corp.*, 268 F. Supp. 3d 276, 279 (D. Mass. 2017) (for purposes of First Circuit's well-pled complaint rule, "a court must disregard statements that merely offer legal conclusions or threadbare recitals of the elements of a cause of action") (citation and internal punctuation omitted).  The Court should thus dismiss these plaintiffs' claims under Count I for lack of subject matter jurisdiction.

### 2.    None of the Plaintiffs Asserting Claims Under Count II Possess Article III Standing Because They Have Failed to Plead Facts Sufficient to Show That They Have Suffered an Injury in Fact.

Plaintiffs Peña Martinez, Santiago Álvarez, Vélez Marrero, Vélez Santiago, Ilarraza Acevedo, Rosado Concepción, Ilarraza Rosado, Rivera, and Valderrama Santiago assert claims under Count II.  Compl. ¶¶ 99-106; *see also id.* ¶¶ 14-16, 19, 21-23, 47.  The injury-in-fact alleged by these plaintiffs is that that they would qualify for SNAP benefits if they resided in one of the fifty States, the District of Columbia, Guam, or the U.S. Virgin Islands, and therefore would receive more nutritional assistance benefits than they currently do through NAP.  Compl. ¶¶ 99-

15

106; *see also id.* ¶¶ 14-16, 19, 21-23, 47.  However, none of these plaintiffs have pleaded facts sufficient to show that they would be eligible for SNAP benefits if they resided in one of the fifty States, the District of Columbia, Guam, or the U.S. Virgin Islands; nor have they pleaded sufficient facts to demonstrate that they would necessarily receive more benefits under SNAP.  As explained above, the eligibility criteria for NAP and SNAP differ with respect to both permissible resource limits and allowable income deductions.  *See supra* Statutory Background part II.  With the exception of plaintiff Ilarraza Acevedo, none of the plaintiffs alleging claims under Count II have pleaded any facts regarding their available resources; moreover, even plaintiff Ilarraza Acevedo fails to plead any information regarding income deductions allowable to him under SNAP.  Thus, none of these plaintiffs have stated facts sufficient to show that they would necessarily qualify for SNAP benefits.

And in any event, none of these plaintiffs plead non-conclusory facts sufficient to show that they would receive more nutritional assistance benefits under SNAP than they presently receive under NAP.  The total NAP benefits amounts alleged by each plaintiff specifically exclude increases to those amounts under the additional $1.27 billion in funding for NAP provided by Congress in 2017.  *See* Compl. at 6 n.17.  Thus, though plaintiff Peña Martinez alleges that she received $198 in monthly benefits when she resided in New York, and "began receiving" $154 under NAP when she moved to Puerto Rico, *id.* ¶ 14, she does not allege the current amount of NAP benefits she is receiving as a result of the funding increase.  And none of the other plaintiffs asserting claims under this count plead any more than purely conclusory allegations that if they resided in one of the fifty States, they would receive more nutritional assistance benefits than they currently do under NAP.  *See* Compl. ¶¶ 15-16, 19, 21-23, 47.  Moreover, although the SNAP program utilizes a higher income limit, there are aspects in which benefits under NAP may be

more generous than under SNAP. For example, several deductions available under NAP (e.g., student deduction, dependent deduction, recurrent medical expense deduction) are not available under SNAP. *Compare* Ex. 1 at 20 *with* 7 U.S.C. § 2014(e) *and* 7 C.F.R. § 273.9(e). The Court should thus dismiss Count II for lack of subject-matter jurisdiction.

**II.      The Complaint Fails to State a Claim on Which Relief Can Be Granted Because Congress May Rationally Limit Eligibility for the Benefits Programs at Issue to Residents of the Fifty States in Pursuit of a Legitimate Government Purpose.**

The complaint should be dismissed for failure to state a claim on which relief can be granted. Plaintiffs' equal protection claims[3] have no merit because the challenged provisions serve legitimate governmental ends and Plaintiffs have failed to negate every reasonably conceivable set of facts that could provide for the different treatment accorded Puerto Rico.

**A.      Rational Basis Review Applies to Plaintiffs' Claims Because Puerto Rico Is a Territory Subject to the Territory Clause.**

The Constitution provides that "Congress shall have Power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States." U.S. Const. Art. IV, § 3, cl. 2 (Territory Clause). That plenary authority extends over "the people of the Territories and all the departments of the territorial government," *First Nat'l Bank v. County of Yankton*, 101 U.S. 129, 133 (1879), and allows Congress to legislate for the territories "in a manner . . . that would exceed its powers or at least would be very unusual, in the context of national legislation enacted under other powers delegated to it." *Palmore v. United States*, 411 U.S. 389, 398 (1973).

---

[3] The Equal Protection Clause prevents a State from "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Under *Bolling v. Sharpe*, 347 U.S. 497, 500 (1954), by operation of the Fifth Amendment's Due Process Clause the same equal protection principles generally constrain the federal government, even though the Equal Protection Clause by its terms does not.

Puerto Rico is a territory of the United States and, thus, subject to Congress's plenary authority under the Territory Clause.  *See, e.g.*, *Harris v. Rosario*, 446 U.S. 651, 651-52 (1980) (per curiam); *Torres v. Puerto Rico*, 442 U.S. 465, 469-71 (1979); *Dávila-Pérez v. Lockheed Martin Corp.*, 202 F.3d 464, 468 (1st Cir. 2000).  The First Circuit has made clear that, although Congress may show its intent in a particular statute to treat Puerto Rico as either a state or territory, there is no question that "Puerto Rico is 'constitutionally a territory,'" *United States v. Maldonado-Burgos*, 844 F.3d 339, 345 (1st Cir. 2016) (quoting *Franklin Cal. Tax-Free Trust v. Puerto Rico*, 805 F.3d 322, 344 (1st Cir. 2015)), and, therefore, Congress has "constitutional authority to legislate for Puerto Rico differently than for the states," *id.* (citing *Justino Mercado v. Puerto Rico*, 214 F.3d 34, 40-44 (1st Cir. 2000)).

Under the Territory Clause, Congress can legislate for Puerto Rico differently than for the States "so long as there is a rational basis for its actions."  *Harris*, 446 U.S. at 651-52 (referencing Congress's Territory Clause power, and applying rational basis review to reject claim that "lower level of [Aid to Families with Dependent Children] reimbursement provided to Puerto Rico violates the Fifth Amendment's equal protection guarantee"); *see also Califano*, 435 U.S. at 3 n.4, 5 n.7 (applying rational basis review to uphold the constitutionality of Congress's exclusion of Puerto Rico from the SSI program).  Courts of appeals also have acknowledged that rational basis review is a necessary consequence of an exercise of Territory Clause authority.  *See, e.g.*, *Besinga v. United States*, 14 F.3d 1356, 1360 (9th Cir. 1994) (stating that "the broad powers of Congress under the Territory Clause are inconsistent with the application of heightened judicial scrutiny to economic legislation pertaining to the territories"); *Quiban v. Veterans Admin.*, 928 F.2d 1154, 1160 (D.C. Cir. 1991) (stating that "the Territory Clause permits exclusions or limitations directed at a territory and coinciding with race or national origin, so long as the restriction rests upon a

18

rational base").  The application of rational basis review is supported in the present case by the Supreme Court's recognition that "[i]n areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification."  *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993).

Given this background, another court in this district has rejected an equal protection challenge "to the implementation of the prospective payment system of Medicare reimbursement for inpatient hospital services in Puerto Rico."  *Hosp. San Rafael v. Sullivan*, 784 F. Supp. 927, 929 (D.P.R. 1991).  In that case, three private hospitals argued that the methodology to "determine [Medicare] reimbursement amounts for Puerto Rico hospitals" violated, *inter alia*, the hospitals' equal protection rights.  *Id*. at 929, 932-33.  The district court correctly noted that rational basis review applied to the challenge because "[t]he entitlement to the receipt of Medicare reimbursement is not a fundamental right guaranteed by the Constitution," *id*. at 939 (citing *Adams Nursing Home v. Mathews*, 548 F.2d 1077, 1081 (1st Cir. 1977)), and because Puerto Rico is subject to the Territory Clause, *id*. at 940 (citing *Harris*, 446 U.S. at 651-52; *García v. Freisecke*, 597 F.2d 284, 293 (1st Cir. 1979)).  That reasoning applies here with equal weight.

**B.      The Challenged Provisions Withstand Constitutional Scrutiny as Applied to Plaintiffs Because They Rationally Relate to Legitimate Governmental Ends.**

Rational basis review "is a paradigm of judicial restraint."  *Beach Commc'ns*, 508 U.S. at 314.  It is axiomatic that "equal protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choices," *id*. at 313, and rational basis review does not "demand  . . . that a legislature or governing decisionmaker actually articulate at any time the purpose or rationale supporting its classification," *Nordlinger v. Hahn*, 505 U.S. 1, 15 (1992).  Thus, "a legislative

choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data." *Beach Commc'ns*, 508 U.S. at 315.  To prevail on their constitutional claims, Plaintiffs bear the burden of demonstrating "that no plausible set of facts exists that could forge a rational relationship between the challenged rules and the government's legitimate goals." *Citizens Awareness Network, Inc. v. United States*, 391 F.3d 338, 355 (1st Cir. 2004).

Binding precedent requires the dismissal of Plaintiffs' claims.  In *Califano*, three individuals who became ineligible for SSI benefits when they moved to Puerto Rico filed suit in this district.  435 U.S. at 1, 2-3.  They alleged that limiting SSI benefit eligibility to, at that time, residents of the 50 U.S. States and the District of Columbia, and concomitantly denying those benefits to individuals who had received SSI benefits when living in one of the fifty States and who had moved to Puerto Rico, violated the constitutional right to travel.  *Id.* at 1-3.  Though a three-judge court initially determined that this eligibility limitation was unconstitutional, the Supreme Court reversed.  *Id.* at 3-4.

In rejecting the *Califano* plaintiffs' right to travel claim, the Court also explained why the plaintiffs could not rely on the equal protection component of the Due Process Clause.  In a footnote, the Supreme Court explained:

> [Plaintiffs'] complaint had also relied on the equal protection component of the Due Process Clause of the Fifth Amendment in attacking the exclusion of Puerto Rico from the SSI program.  Acceptance of that claim would have meant that all otherwise qualified persons in Puerto Rico are entitled to SSI benefits, not just those who received such benefits before moving to Puerto Rico.  But the District Court apparently acknowledged that Congress has the power to treat Puerto Rico differently, and that every federal program does not have to be extended to it. Puerto Rico has a relationship to the United States that has no parallel in our history.

*Id.* at 3 n.4 (citations and internal punctuation omitted).  As the Court noted, as long as the provision of the Social Security Act at issue is rational, it should be deemed constitutional.  *Id.* at

4.  *See Trailer Marine Transp. Corp. v. Rivera Vazquez*, 977 F.2d 1, 7 (1st Cir. 1992) ("[U]nder governing Supreme Court precedent, Congress may, and sometimes has, enacted laws that make different provision for Puerto Rico than for the states, limited only by a rational basis requirement.") (citing *Harris*, 446 U.S. 651).  And as the Supreme Court explained in *Califano*, several rational bases do indeed support the SSI exclusion for residents of Puerto Rico:

> At least three reasons have been advanced to explain the exclusion of persons in Puerto Rico from the SSI program.  First, because of the unique tax status of Puerto Rico, its residents do not contribute to the public treasury.  Second, the cost of including Puerto Rico would be extremely great – an estimated $300 million per year.  Third, inclusion in the SSI program might seriously disrupt the Puerto Rican economy.

435 U.S. at 4 n.7 (citation omitted).

As in *Califano*, here, "we deal . . . with a constitutional attack upon a law providing for governmental payments of monetary benefits," which is therefore "entitled to a strong presumption of constitutionality."  *Id.* at 5 (citation and internal punctuation omitted).  Additionally, "[s]o long as its judgments are rational, and not invidious, the legislature's efforts to tackle the problems of the poor and the needy are not subject to a constitutional straitjacket."  *Id.* (quoting *Jefferson v. Hackney*, 406 U.S. 535, 546 (1972)).

Furthermore, two years after deciding *Califano*, the Supreme Court held that the Secretary of Health and Human Services had acted consistently with principles of equal protection by providing levels of financial assistance to families with dependent children in Puerto Rico that were lower than assistance provided to families with dependent children in the 50 U.S. States, reversing a contrary decision from this district.  *Harris*, 446 U.S. at 651-52.  In *Harris*, the Court reiterated its equal-protection holding from *Califano*:

> Congress, which is empowered under the Territory Clause of the Constitution, U.S. Const., Art. IV, § 3, cl. 2, to "make all needful Rules and Regulations respecting the Territory . . . belonging to the United States," may treat Puerto Rico differently

21

from States so long as there is a rational basis for its actions. In [*Califano*], we concluded that a similar statutory classification was rationally grounded on three factors: Puerto Rican residents do not contribute to the federal treasury; the cost of treating Puerto Rico as a State under the statute would be high; and greater benefits could disrupt the Puerto Rican economy. These same considerations are forwarded here . . . , and we see no reason to depart from our conclusion in [*Califano*] that they suffice to form a rational basis for the challenged statutory classification.

*Id.* at 651-52 (footnote and internal citation omitted).

As explained in *Harris* and *Califano*, the unique tax status of Puerto Rico and the high cost of treating Puerto Rico as a State for purposes of determining the allocation of federal funds under SSI, Medicare Part D, and SNAP constitute rational bases for Congress's actions. *See Harris*, 446 U.S. at 652; *Califano*, 435 U.S. at 5 n.7. So is the fact that providers in Puerto Rico have "lower operating costs" compared to providers in the States. *Hosp. San Rafael*, 784 F. Supp. at 940. Those additional costs to the public fisc provide, at a minimum, a "reasonably conceivable state of facts that could provide a rational basis" for the statutory provisions at issue here. *Beach Commc'ns*, 508 U.S. at 313.

In addition to these rational bases, the Supreme Court has recognized that statutory provisions that require the legislature to engage in the process of "line-drawing" are "unavoidable components of most economic or social legislation." *Id.* at 315-16. The legislature's judgment in deciding the most appropriate manner in which to allocate resources under SSI, Medicare Part D, and SNAP requires Congress to "draw the line somewhere." *Id.* at 316. "This necessity renders the precise coordinates of the resulting legislative judgment virtually unreviewable, since the legislature must be allowed leeway to approach a perceived problem incrementally." *Id.* Whether to increase economic benefits to the territories under these programs and whether to do so incrementally and on a case-by-case basis is the sort of line drawing that constitutes a "virtually unreviewable" exercise of legislative prerogative. *See id.*

22

Though Plaintiffs acknowledge the existence of *Califano* and *Harris*, Compl. ¶ 85, they allege that "[i]ntervening events have proven the assumptions underlying [these decisions] incorrect" and contend that "these decisions require judicial re-examination." *Id.* ¶ 86.[4]  However, as the First Circuit has pointedly noted, the Supreme Court "has admonished the lower federal courts to follow its directly applicable precedent, even if that precedent appears weakened by pronouncements in its subsequent decisions, and to leave to the [Supreme] Court 'the prerogative of overruling its own decisions.'" *Figueroa v. Rivera*, 147 F.3d 77, 81 n.3 (1st Cir. 1998) (quoting *Agostini v. Felton*, 521 U.S. 203, 237 (1997)).   Thus, even if this Court were to conclude (incorrectly) that intervening events had demonstrated the assumptions underlying *Califano* and *Harris* to be incorrect, the appropriate course of action would nevertheless be to follow those Supreme Court decisions, because they are "directly applicable precedent" here.  Plaintiffs claim that intervening events prove the underlying Congressional assumptions to be incorrect, but "a legislative choice is not subject to courtroom factfinding and may be based on rational speculation unsupported by evidence or empirical data." *Beach Commc'ns*, 508 U.S. at 315.

Nor does any case law cited by Plaintiffs undermine the applicability of this binding precedent.  *See* Compl. ¶¶ 75-88.   Initially, Plaintiffs miss the mark in relying on case law supporting the proposition that equal protection principles apply with equal force to legislation enacted by Congress under the Territory Clause.  *Id.* ¶¶ 75-81.  The Supreme Court has made clear that in the application of such principles, "Congress, which is empowered under the Territory Clause of the Constitution, to 'make all needful Rules and Regulations respecting the Territory

---

[4] Plaintiffs note that Puerto Rico residents pay a number of federal taxes, though they do not dispute that Puerto Rico residents are taxed differently, including as to income, than are residents of the fifty States and the District of Columbia.  Compl. ¶ 86.  Moreover, the Supreme Court made clear in *Califano* that the Constitution does not compel Congress to extend every governmental payment of monetary benefits to Puerto Rico.  *See Califano*, 435 U.S. at 3-5 & n.4.

23

. . . belonging to the United States,' may treat Puerto Rico differently from States so long as there is a rational basis for its actions." *Harris*, 446 U.S. at 651-52 (internal citation omitted). Indeed, Plaintiffs concede – as they must – that because the Territory Clause "bestows broad power on Congress to legislate with respect to Territories," "'Congress can, pursuant to the plenary powers conferred by the Territorial Clause, legislate as to Puerto Rico in a manner different from the rest of the United States.'" Compl. ¶ 82 (quoting *United States v. Rivera Torres*, 826 F.2d 151, 154 (1st Cir. 1987)). Furthermore, nothing in *United States v. Lebrón-Caceres*, 157 F. Supp. 3d 80, 89 (D.P.R. 2016), cited by Plaintiffs, holds to the contrary – indeed, that case neither mentions the words "equal protection" nor purports to undermine the precedential status of *Harris* and *Califano*.[5] And because none of the remaining case law cited by Plaintiffs concerns payments to residents of U.S. territories, this Court has no basis to depart from binding precedent. *See* Compl. ¶ 88; *Califano v. Goldfarb*, 430 U.S. 199, 201-02 (1977) (invalidating survivors' benefits scheme favoring widows over widowers); *Jiminez v. Weinberger*, 417 U.S. 628, 630, 637-38 (1974) (striking down statute making certain illegitimate children ineligible for disability benefits); *U.S. Dep't of Agric. v. Moreno*, 413 U.S. 528, 529 (1973) (invaliding exclusion from participation in food stamp program any household containing persons unrelated to other household members); *Frontiero v. Richardson*, 411 U.S. 677, 678-79 (1973) (affirming right of women in armed services to seek increased benefits for spouse as "dependent" in the same manner as men in armed services).

      Finally, neither the economic crisis nor the extent of the disparity with which Puerto Rico

---

[5] In any event, this Court is not bound by *Lebrón-Caceres* because "[a] decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) (quoting 18 J. Moore et al., *Moore's Federal Practice* § 134.02[1] [d], p. 134-26 (3d ed. 2011)). By contrast, this Court *is* bound by the Supreme Court's decisions in *Califano* and *Harris*.

is treated undermines the rationality of the challenged statutes.  *See* Compl. ¶ 90; *Cook v. Gates*, 528 F.3d 42, 55 (1st Cir. 2008) (stating that "the focus" of rational basis review is "entirely on the rationality of the [government's] reason for enacting the law" and not "the strength of the individual's interest or the extent of the intrusion on that interest caused by the law").  Precisely because Puerto Rico is undergoing a serious fiscal and financial crisis, Congress has acted recently to increase funding and economic benefits to the Commonwealth and its citizens.[6]  But whether Congress decides to extend those benefits in equal fashion to all other recipients are quintessentially legislative judgments that are not compelled by the Constitution.

As explained by binding precedent, the statutory provisions at issue here withstand constitutional scrutiny.  Plaintiffs' equal protection claims therefore lack merit, and should be dismissed for failure to state a claim on which relief can be granted.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss Plaintiffs' complaint with prejudice.

---

[6] The Department of Health and Human Services has undertaken a number of administrative measures to address Puerto Rico's health needs, including a variety of modifications to Medicare Part C designed to increase reimbursement to Puerto Rico.  *See* 82 Fed. Reg. 56336, 56402-06, 56500-02 (proposed Nov. 28, 2017); *see also* CMS: Hurricanes, https://www.cms.gov/About-CMS/Agency-Information/Emergency/Hurricanes.html (last visited June 11, 2018).  On September 18, 2017, the Secretary of Health and Human Services declared that a public health emergency exists in Puerto Rico, and authorized waivers pursuant to his authority under Section 1135 (42 U.S.C. § 1329b-5) of the Social Security Act.  This action waived or modified a variety of restrictions and reporting requirements for Medicare reimbursement from September 16, 2017 through June 12, 2018.  (*See* Hurricane Maria and Medicare Disaster Relief Related to United States Virgin Islands and Commonwealth of Puerto Rico Claims, MLN Matters No. SE1028, Revised (October 2, 2017)).  On January 17, 2018, CMS created a special enrollment period providing additional opportunities for Puerto Rico residents to reenroll in Medicare health plans, drug plans, and enrollment in the Federal Health Insurance Exchange.  *See* CMS Announces Additional Special Enrollment Periods to help Individuals Impacted by Hurricanes in Puerto Rico and the U.S. Virgin Islands, https://www.cms.gov/Newsroom/MediaReleaseDatabase/Press-releases/2018-Press-releases-items/2018-01-17.html (last visited June 21, 2018).

Dated: June 25, 2018                          Respectfully submitted,


                                              CHAD A. READLER
                                              Acting Assistant Attorney General

                                              ROSA E. RODRÍGUEZ-VÉLEZ
                                              United States Attorney

                                              ERIC WOMACK
                                              Assistant Branch Director

                                               /s/ Daniel Riess
                                              DANIEL RIESS
                                              Trial Attorney
                                              U.S. Department of Justice
                                              Civil Division, Rm. 6122
                                              20 Massachusetts Avenue, NW
                                              Washington, D.C. 20530
                                              Telephone: (202) 353-3098
                                              Fax: (202) 616-8460
                                              Email: Daniel.Riess@usdoj.gov
                                              *Attorneys for Defendants*



## CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of June, 2018, I electronically filed the foregoing

with the Clerk of the Court using the CM/ECF System, which will automatically send notifications

of this filing to all attorneys of record.

                                               /s/ Daniel Riess
                                              Daniel Riess