# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| SIXTA GLADYS PEÑA MARTINEZ *et al.*, ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | Case No. 3:18-cv-01206-WGY |
| ) | |
| ALEX M. AZAR II, Secretary, United States ) | |
| Department of Health and Human Services, ) | |
| in his official capacity *et al.*, ) | |
| ) | |
| **Defendants.** ) | |
| _____ ) | |

## DEFENDANTS' MEMORANDUM OF LAW REGARDING REMEDIES

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................... 1

ARGUMENT ............................................................................................................................. 1

    I.    Any Remedy Should Be Limited to the Nine Plaintiffs Who Have Demonstrated a Certainly Impending Future Injury .................................................... 1

        A.    Plaintiffs Lack Standing to Seek Relief for Non-Parties, and Awarding Broader Relief Would Be Inconsistent With Fundamental Principles of Equity ......................................................................................... 1

        B.    Because No Class Has Been Certified, Relief Beyond the Named Plaintiffs Would Be Inconsistent With First Circuit Precedent and Relief Awarded in Similar Cases. ................................................................. 5

        C.    It Is Unnecessary for the Court to Address Plaintiff's Facial Validity Claims, But in Any Event, Such Claims Do Not Mandate Relief Beyond the Named Plaintiffs .......................................................................... 7

        D.    Analogous Administrative Procedure Act Claims Remain Subject to Traditional Considerations Governing Equitable Relief .............................. 10

    II.    In the Alternative, Defendants Request an Administrative Stay of Proceedings ..... 11

CONCLUSION ....................................................................................................................... 13

## INTRODUCTION

For the reasons stated in Defendants' merits briefs and during oral argument, Plaintiffs have failed to demonstrate that the social welfare benefits programs they challenge here are inconsistent with principles of equal protection. Defendants therefore respectfully request that the Court enter summary judgment in their favor, and deny Plaintiffs' motion for summary judgment. Nonetheless, even if the Court were to disagree with Defendants' merits position, the sole appropriate remedy would be relief limited to the nine individual plaintiffs in this action. Any remedy extending beyond this scope would be inconsistent with Article III standing requirements and fundamental principles of equity. It would also be contrary to First Circuit precedent limiting classwide relief to cases in which a cognizable class has been certified, and with principles of constitutional avoidance. Alternatively, in the event that the Court were to grant a more burdensome form of relief, then Defendants would respectfully request that the Court issue a 60-day administrative stay of proceedings to permit the government to decide whether to appeal the Court's decision and, if so, whether to seek a full stay pending appeal.

## ARGUMENT

**I.    Any Remedy Should Be Limited to the Nine Plaintiffs Who Have Demonstrated a Certainly Impending Future Injury.**

    **A.    Plaintiffs Lack Standing to Seek Relief Plaintiffs for Non-Parties, and Awarding Broader Relief Would Be Inconsistent With Fundamental Principles of Equity.**

Were the Court to order declaratory or injunctive relief here, any such remedy should be limited to the nine individual plaintiffs who have demonstrated an impending future injury in order to have standing for prospective relief. *See generally Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013). The Supreme Court has repeatedly held that "standing is not dispensed in

1

gross" and that "a plaintiff must demonstrate standing for each claim he seeks to press and for *each form of relief* that is sought." *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017) (quoting *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) (emphasis added)); *see also Gill v. Whitford*, 138 S. Ct. 1916, 1934 (2018) ("A plaintiff's remedy must be tailored to redress the plaintiff's particular injury."). Furthermore, a plaintiff does not retain standing to challenge a law in the abstract when its application to that plaintiff has been resolved. *See Summers v. Earth Island Inst.*, 555 U.S. 488, 494-97 (2009). Accordingly, this Court's jurisdiction to provide a remedy is limited to redressing the actual impending future injuries of the nine individual plaintiffs in this action.

To the extent that Plaintiffs might seek broader relief, such a request would be inconsistent with Article III's judicial power, which "exists *only* to redress or otherwise protect against injury to the complaining party, even though [in some instances] the court's judgment may benefit others collaterally." *Warth v. Seldin*, 422 U.S. 490, 499 (1975) (emphasis added). The Supreme Court recently reaffirmed this important limitation on the scope of judicial authority in *Gill*, concluding that a set of voters had not demonstrated standing to challenge alleged statewide partisan gerrymandering of Wisconsin legislative districts. *Gill*, 138 S. Ct. 1916. The plaintiffs alleged that voters who shared their political views were disadvantaged by the way that district lines were drawn statewide, and that they were therefore entitled to challenge the entire state map. *Id*. at 1924-25. But, admonishing that "[t]he Court's constitutionally prescribed role is to vindicate the individual rights of the people appearing before it," *id*. at 1933, *Gill* concluded that a plaintiff's remedy "must of course be limited to the inadequacy that produced the injury in fact that the plaintiff has established," *id*. at 1931 (quoting *Lewis v. Casey*, 518 U.S. 343, 357 (1996)). Accordingly, the Court held that "the remedy that is

proper and sufficient lies in the revision of the boundaries of the individual's own district," not the broader remedy of "restructuring all of the State's legislative districts." *Id*. at 1930-31.  So too here, the only remedy that is proper under Article III is one that is narrowly limited to Plaintiffs' "particular injur[ies]." *Id*. at 1934; *see also Monsanto v. Geertson Seed Farms*, 561 U.S. 139, 165-66 (2010) (invalidating broader injunction where less burdensome remedy was available to redress parties' harm).

Defendants are mindful that in its decision denying their dismissal motion, the Court determined that these nine plaintiffs had sufficiently alleged standing to sue.  *See Peña Martinez v. Azar*, 376 F. Supp. 3d 191, 202-04 (D.P.R. 2019).  However, such a determination does not establish that every Puerto Rico resident conceivably eligible for the challenged programs thereby possesses standing to sue.  Similarly, the Court's determination that, under the particular circumstances presented in this case, it was unnecessary to address whether these specific plaintiffs had satisfied the mandatory presentment requirement of 42 U.S.C. § 405(g), does not entail a finding that this requirement has been satisfied for every Puerto Rico resident who might otherwise be eligible for the Supplemental Security Income ("SSI") or Medicare Part D Low Income Subsidy ("LIS") programs.  *See id*. at 200-02.  Instead, determining whether any particular Puerto Rico residents possesses standing to sue or has satisfied the statutory presentment requirement would require consideration of his or her individualized facts and circumstances.

In addition to standing doctrine, equitable principles also require that any injunctive relief be limited to redressing a plaintiff's own injuries stemming from a violation of his or her own rights.  Paralleling the rule under Article III, the rule in equity is that "an injunction must be 'no more burdensome to the defendant than necessary to provide complete relief to *the plaintiffs*.'"

*Sindi v. El-Moslimany*, 896 F.3d 1, 31 (1st Cir. 2018) (emphasis added) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)); *see also, e.g.*, *Trump v. Hawaii*, 138 S. Ct. 2392, 2427-28 (2018) (Thomas, J., concurring) (noting that the tradition of equity inherited from English law was premised on "providing equitable relief only to parties" because the fundamental role of a court was to "adjudicate the rights of 'individual[s]'") (quoting *The Federalist* No. 78, at 466 (Alexander Hamilton) (Clinton Rossiter ed., 1961)); *see generally Dep't of Homeland Sec. v. New York*, 140 S. Ct. 599, 600 (2020) (Gorsuch, J., concurring in the grant of stay) (detailing the costs of injunctions that "direct how the defendant must act toward persons who are not parties to the case"). "[C]ourts must [therefore] closely tailor injunctions to the harm that they address." *NACM-New England, Inc. v. Nat'l Ass'n of Credit Mgmt., Inc.*, 927 F.3d 1, 7 (1st Cir. 2019) (quoting *Tamko Roofing Prods., Inc. v. Ideal Roofing Co.*, 282 F.3d 23, 40 (1st Cir. 2002)).

      Even if the Court were to disagree with the merits arguments presented by Defendants, Plaintiffs have made no showing—including in their supplemental remedies brief—that relief extending beyond the nine named plaintiffs would be necessary to place them in their allegedly rightful positions. Consequently, awarding relief beyond this scope would run afoul of basic equitable principles because it would be much more burdensome to Defendants than necessary. A 2010 study conducted by the U.S. Department of Agriculture concluded that implementing the Supplemental Nutrition Assistance Program ("SNAP") in Puerto Rico would "lead to higher administrative burden," requiring a number of significant, fundamental changes to agency "program structure and operational processes." Food & Nutrition Service, U.S. Department of Agriculture, *Implementing Supplemental Nutrition Assistance Program in Puerto Rico: A Feasibility Study* iii (June 2010) (attached as Ex. 1). Implementing SSI and LIS in Puerto Rico would necessitate similar burdensome changes to agency operations. Thus, requiring three

federal agencies to take such actions would be inconsistent with fundamental principles of equity because such a requirement would be completely unnecessary to provide the plaintiffs in this action with complete relief.

> **B.     Because No Class Has Been Certified, Relief Beyond the Named Plaintiffs Would Be Inconsistent With First Circuit Precedent and Relief Awarded in Similar Cases.**

The First Circuit has also made clear that granting classwide relief—which is what a broad injunction here would effectuate—is improper in a case where (as here) no class has been certified. *See Brown v. Trustees of Boston Univ.*, 891 F.2d 337, 361 (1st Cir. 1989) ("Ordinarily, classwide relief, . . . , is appropriate only where there is a properly certified class.") (citation omitted); *see id.* (vacating injunction enjoining university from engaging in sex discrimination to the extent its scope extended beyond the named plaintiff). "[T]here is no . . . reason here for an injunction running to the benefit of nonparties," *id.*, because the nine individual plaintiffs have not demonstrated that anything other than permanent relief directed to them would be necessary to remedy their alleged injuries. This First Circuit doctrine is consistent with precedent from other Circuits. *See, e.g.*, *Los Angeles Haven Hospice v. Sebelius,* 638 F.3d 644, 664 (9th Cir. 2011) (limitation on relief to only the named plaintiff has "special force" where "there is no class certification"); *Jean-Baptiste v. Dist. of Columbia*, 958 F. Supp. 2d 37, 50 (D.D.C. 2013) ("[I]f granted, injunctions should be narrowly tailored and should generally apply only to the plaintiff where a class has not been certified.") (citing, *inter alia*, *Brown*, 891 F.2d at 361); *Meyer v. CUNA Mut. Ins. Soc.*, 648 F.3d 154, 171 (3d Cir. 2011) (vacating injunctive relief extending beyond named plaintiff following decertification of class, and noting that "[o]ther circuits have also found injunctions to be overbroad where their relief amounted to class-wide relief and no class was certified") (citing authority).

Indeed, the merits briefs submitted by Plaintiffs themselves do not support the conclusion that any relief beyond the named plaintiffs is necessary to redress their alleged harms. Both of Plaintiffs' merits briefs concluded by asserting that the relief sought was limited to the named plaintiffs. *See* Pls.' Mot. for Summ. J. at 25, ECF No. 72 (requesting that the Court, under the heading "Conclusion & Relief Sought," "enter a declaratory judgment that it is unconstitutional to exclude *Plaintiffs* from the SSI, SNAP, and LIS programs based on their residence in Puerto Rico, and enjoin Defendants from excluding *Plaintiffs* from the SSI, SNAP, and LIS programs based on their residence in Puerto Rico") (emphasis added); Pls.' Reply in Supp. of Mot. for Summ. J. at 22, ECF No. 83 (requesting the same relief under the same heading). Nor does Plaintiffs' supplemental remedies brief demonstrate that relief tailored to the named plaintiffs is insufficient to fully protect their interests.

Such a limitation would also be consistent with the final relief awarded in similar cases in which residents of U.S. Territories have challenged their exclusion from social welfare benefits eligibility as inconsistent with equal protection principles. In *Schaller v. Social Security Administration*, No. 18-00044 (D. Guam. June 19, 2020) (attached as Ex. 2), the District of Guam determined that the exclusion of Guam residents from eligibility to receive SSI benefits was not consistent with principles of equal protection. *See id.*, slip op. at 20. Nevertheless, the Court limited the relief awarded in that case to "enjoin[ing] Defendants from enforcing against *the Plaintiff* such discriminatory provisions of the SSI statute and any relevant implementing regulations." *Id.* (emphasis added). The District of Guam reached this determination after considering supplemental briefing from the parties that specifically raised the scope-of-remedy issue. *See* Order re: Supplemental Briefing at 2, *Schaller v. Soc. Sec. Admin.*, No. 18-00044 (D.

6

Guam Apr. 28, 2020) (directing the parties to address, *inter alia*, "whether any relief the court may grant can be limited strictly to the Plaintiff in this case").[1]

> **C.    It Is Unnecessary for the Court to Address Plaintiffs' Facial Validity Claims, But in Any Event, Such Claims Do Not Mandate Relief Beyond the Named Plaintiffs.**

Furthermore, if the Court were to conclude that the challenged programs are inconsistent with equal protection principles as applied to these plaintiffs, there is no need for the Court to reach the additional issue of facial validity. Both the Supreme Court and the First Circuit have "explained that[] facial challenges are disfavored for several reasons," including that they "run contrary to the fundamental principle of judicial restraint that courts should neither anticipate a question of constitutional law in advance of the necessity of deciding it nor formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied." *Hightower v. City of Boston*, 693 F.3d 61, 76, 77 (1st Cir. 2012) (quoting *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 (2008); *Ashwander v. TVA*, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring)) (internal punctuation omitted). This principle of constitutional avoidance makes it unnecessary for the Court to ascertain the facial validity of the challenged programs, as such a determination would be broader than required by the facts of this case. *See, e.g.*, *Citizens United v. Gessler*, 773 F.3d 200, 209 (10th Cir. 2014) ("We need not address

---

[1] Similarly, neither the district court nor the court of appeals in *United States v. Vaello-Madero* afforded relief beyond the individual beneficiary at issue in that case. *See United States v. Vaello Madero*, 356 F. Supp. 3d 208, 211, 216 (D.P.R. 2019) (entering summary judgment on Vaello Madero's "conten[tion that] he is not required to return the payments he received in [Supplemental] Security Income ('SSI') disability benefits upon changing his domicile to Puerto Rico since excluding a United States citizen residing in the territory from receiving the same runs afoul of the equal protection guarantees of the Due Process Clause"); *United States v. Vaello-Madero*, 956 F.3d 12, 32 (1st Cir. 2020) (affirming summary judgment decision).

Citizen United's facial challenge . . . because a ruling of facial invalidity would not grant Citizens United any additional relief.").

In any event, the relevant inquiry involves not the nature of Plaintiffs' challenge, but, rather, whether a broader injunction is necessary to provide complete relief to the named plaintiffs. Because the named plaintiffs cannot contend that declaratory or injunctive relief benefiting nonparties is necessary to provide them with complete relief, any remedy awarded in this case should apply only to them. The Supreme Court has made clear that "although the occasional case requires us to entertain a facial challenge," nevertheless, courts neither "want nor need to provide relief to nonparties when a narrower remedy will fully protect the litigants." *United States v. Nat'l Treasury Employees Union*, 513 U.S. 454, 477-78 (1995) (citations omitted).

In *National Treasury Employees Union*, two unions and several employees challenged the constitutionality of a statute banning federal employees from receiving certain payments. *Id*. at 461. After finding the statute unconstitutional, "[t]he relief granted by the District Court and upheld by the Court of Appeals enjoined enforcement of the entire . . . ban as applied to the entire Executive Branch of the Government." *Id*. at 477 (footnote omitted). Though the Supreme Court agreed that the statute "violate[d] the First Amendment," it reversed on the issue of remedy, holding that "relief should be limited to the parties before the Court." *Id*. Among other reasons, the Court explained that the "policy of avoiding unnecessary adjudication of constitutional issues . . . counsel[ed] against" a broader determination. *Id*. at 478 (citing *Ashwander*, 297 U.S. at 346-47) (Brandeis, J., concurring)). Here, too, "granting full relief to [the named plaintiffs] . . . does not require passing on the applicability of" the challenged programs on their face. *Id*. Similarly, *Meinhold v. U.S. Department of Defense*, 34 F.3d 1469

8

(9th Cir. 1994), concluded that a federal regulation banning gays and lesbians from military service violated equal protection principles, but vacated the issuance of a nationwide injunction, ordering relief to be limited to the named plaintiff. *Id*. at 1480. Despite the finding of facial invalidity, the court explained that "[t]his is not a class action," and that under traditional principles of equity, "[e]ffective relief [could] be obtained by directing the Navy not to apply its regulation to" the named plaintiff. *Id*. (citing *Califano*, 442 U.S. at 702, for the proposition that "[a]n injunction should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs").

Thus, a finding of facial unconstitutionality does not mandate relief beyond a named plaintiff, particularly in light of fundamental equitable principles. *See also, e.g.*, *Los Angeles Haven Hospice*, 638 F.3d at 655 (despite the fact that federal regulation was facially invalid, district court abused its discretion in issuing relief beyond named plaintiff because, *inter alia*, such relief "would significantly disrupt the administration of the Medicare program"); *Belitskus v. Pizzingrilli*, 343 F.3d 632, 649-50 (3d Cir. 2003) (invalidating global injunction in equal protection challenge to filing fees for political candidates because "district courts granting injunctions" in such cases "'should craft remedies no broader than necessary to provide full relief to the aggrieved plaintiff'"); *Virginia Soc'y for Human Life, Inc. v. Fed. Election Comm'n*, 263 F.3d 379, 392-94 (4th Cir. 2001) (holding that district court's injunction prohibiting federal agency from enforcing regulation on nationwide basis was overbroad, despite the fact that the regulation was facially unconstitutional, and remanding with instructions to limit the injunction to the named plaintiff), *overruled on other grounds*, 681 F.3d 544 (4th Cir. 2012); *Ameron, Inc. v. U.S. Army Corps of Eng'rs*, 787 F.2d 875, 888-90 (3d Cir. 1986) (in rejecting federal government's determination not to enforce statutory provisions it deemed unconstitutional,

9

district court erred by issuing overbroad remedy in enjoining government from refusing to comply with provisions with respect to all parties similarly situated to plaintiffs and intervenors on a district-wide basis); *Russell-Murray Hospice, Inc. v. Sebelius*, 724 F. Supp. 2d 43, 60 (D.D.C. 2010) (declining to issue injunctive relief extending beyond named plaintiff, despite finding federal regulation facially invalid); *Hospice of New Mexico, LLC v. Sebelius*, 691 F. Supp. 2d 1275, 1294 (D.N.M. 2010) (same), *aff'd*, 435 F. App'x 749 (10th Cir. 2011).

Under the principle of constitutional avoidance, the Court need not (and should not) address the facial validity of the challenged programs. In any event, however, because a remedy limited to the nine plaintiffs will fully protect their interests and broader relief would be unduly burdensome, even a finding of facial invalidity would not require any broader remedy.

### D. Analogous Administrative Procedure Act Claims Remain Subject to Traditional Considerations Governing Equitable Relief.

Finally, to the extent that Plaintiffs might analogize this case to challenges to agency action brought under the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.* ("APA"), nothing in that statute expands the Court's jurisdiction beyond its traditional constitutional and equitable limitations. Rather, the APA preserves all ordinary principles of equity. *See* 5 U.S.C. § 702(1) ("Nothing herein affects … the power or duty of the court to … deny relief on any other appropriate legal or equitable ground[.]"). Although Section 706(2) of the APA authorizes unlawful "agency action" to be "set aside," it does not provide that such action be set aside facially, as opposed to solely with respect to those applications that actually injure a plaintiff. Accordingly, Section 706(2) is not properly construed to displace the general rule that equitable remedies may go no further than necessary to redress plaintiff's own injury. *See Weinberger v. Romero-Barcelo*, 456 U.S. 305, 313 (1982) ("[W]e do not lightly assume that Congress has intended to depart from established [equitable] principles."). And in this case, the sole relevant

10

action of the three federal defendant-agencies is discrete benefits program eligibility determinations for nine individual plaintiffs. Consequently, even if the Court were to disagree with Defendants' merits position, that is the only "agency action" that would be appropriately "set aside." *See, e.g.*, *Los Angeles Haven Hospice*, 638 F.3d at 665 (vacating district court's grant of nationwide injunction in APA case as "too broad" where narrower order "would have afforded the plaintiff complete relief").

In sum, even if the Court were to disagree with Defendants' position on the merits, Plaintiffs have not demonstrated that relief beyond the nine named plaintiffs would be necessary to place them in their allegedly rightful positions. Awarding any such relief would be inconsistent with Article III standing doctrine, fundamental equitable principles, First Circuit precedent regarding class actions, and principles of constitutional avoidance.

## II.     In the Alternative, Defendants Request an Administrative Stay of Proceedings.

In the event that the Court were to grant permanent relief beyond the nine individual plaintiffs, then pursuant to the Court's inherent authority to manage its docket, Defendants would respectfully request the Court to issue a 60-day administrative stay of such relief, in order to allow adequate time for the government to determine whether to appeal the Court's decision and, if so, whether to seek a stay pending appeal. "A district court enjoys inherent power to 'control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" *City of Bangor v. Citizens Commc'ns Co.*, 532 F.3d 70, 99 (1st Cir. 2008) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *Taunton Gardens Co. v. Hills*, 557 F.2d 877, 879 (1st Cir. 1977)). This inherent power encompasses "broad discretion to stay proceedings." *Clinton v. Jones*, 520 U.S. 681, 706-07 (1997).

The determination whether to appeal a district court decision is entrusted by regulation to the Solicitor General of the United States. *See* 28 C.F.R. § 0.20(b). The requested 60-day stay would merely preserve the status quo, and would represent a modest amount of time for the Solicitor General to determine whether to appeal, after consultation with the affected governmental components. *See also* 28 U.S.C. § 2107(b) (allowing 60 days for filing a notice of appeal when the federal government is a party). No undue prejudice would result to Plaintiffs from such a short stay, as evidenced by the fact that the present case has been pending since April 13, 2018, and Plaintiffs have neither sought preliminary injunctive relief nor any other form of emergency relief. On the other side of the balance, as explained above, Defendants will be irreparably injured absent an administrative stay because all three defendant-agencies will be required to implement burdensome changes affecting the fundamental nature of their respective operational processes and program structures. *See supra* I.A. And the overall balance of harms likewise favors Defendants. It has been estimated that if Puerto Rico residents had been eligible for SSI benefits in 2011, federal spending would have increased from approximately $24 million to a range from $1.5 to $1.8 billion. Joint Stipulation of Facts ¶ 36, ECF No. 67. Similarly, it has been estimated that if Puerto Rico residents had been eligible for SNAP in 2011, aggregate benefits could have increased by as much as $700 million. *Id.* And in 2011, an estimated 500,000 Medicare beneficiaries in Puerto Rico would have been eligible for the low-income subsidy. *Id.* ¶ 37. These estimated cost increases are likely to be even greater in 2020, given population growth and inflation.

To be clear, if the Court limits permanent relief to the named plaintiffs, Defendants do not believe that an administrative stay would be necessary. However, because broader relief

would irreparably harm Defendants, in the event that such relief were to be awarded, Defendants would request an administrative stay of proceedings to preserve the status quo.

## CONCLUSION

As explained in Defendants' merits briefs and during oral argument, Plaintiffs are not entitled to any form of relief in this case. Nevertheless, even if the Court were to disagree with Defendants' merits position, for the foregoing reasons, any relief awarded in this case should extend no further than necessary to the nine named plaintiffs. In the alternative, if the Court were to order a broader form of relief, then Defendants would respectfully request that the Court enter a 60-day administrative stay of proceedings.

Dated: June 25, 2020                                  Respectfully submitted,

                                                      JOSEPH H. HUNT
                                                      Assistant Attorney General

                                                      ERIC WOMACK
                                                      Assistant Branch Director

                                                       /s/ Daniel Riess
                                                      DANIEL RIESS
                                                      Trial Attorney
                                                      U.S. Department of Justice
                                                      Civil Division
                                                      1100 L Street, NW
                                                      Washington, D.C. 20005
                                                      Telephone: (202) 353-3098
                                                      Fax: (202) 616-8460
                                                      Email: Daniel.Riess@usdoj.gov
                                                      *Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 25th day of June, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will automatically send notifications of this filing to all attorneys of record.

  /s/ Daniel Riess